# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:10CV362-RJC-DSC

| | | |
|---|---|---|
| CLAUDIA CHAMBERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM AND RECOMMENDATION** |
| | ) | |
| ASHLEY FURNITURE | ) | |
| INDUSTRIES, INC; ISH | ) | |
| MOORE, INC. d/b/a ASHLEY | ) | |
| FURNITURE HOMESTORES; | ) | |
| and ASHLEY HOMESTORES, | ) | |
| LTD. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on "Defendants Ashley Furniture Industries, Inc.'s and Ashley HomeStores, Ltd.'s Motion to Dismiss or In the Alternative, Motion for Summary Judgment" (document #14) filed September 13, 2010, "Defendant Ish Moore Inc.'s Motion to Dismiss" (document #17) filed September 13, 2010, and "Defendants Ashley Furniture Industries, Inc.'s and Ashley HomeStores, Ltd.'s Motion for Sanctions" (document #22) filed September 17, 2010; and the parties' associated briefs and exhibits (documents ##15, 16, 18, 23, 24, 26, 27, 28, 31, 32, 33 and 34).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants Ashley Furniture Industries, Inc.'s and Ashley HomeStores, Ltd.'s Motion to Dismiss be <u>granted</u>, Defendant Ish Moore Inc.'s Motion to Dismiss be <u>granted in part and denied in part</u>, and Defendants Ashley Furniture Industries, Inc.'s

and Ashley HomeStores, Ltd.'s Motion for Sanctions be <u>denied</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Taking as true the factual allegations of the First Amended Complaint (document #1-1), Plaintiff Claudia Chambers is an African-American female who was employed by Ashley Furniture HomeStore located at 11320 Carolina Place Parkway, Pineville, North Carolina (hereinafter the "Pineville Store") from August 2005 to the date of her termination on January 7, 2008. Defendant Ashley Furniture Industries, Inc. (hereinafter "Ashley Furniture") is a Wisconsin corporation whose principal office is in Arcadia, Wisconsin and is and has at all relevant times been doing business in the state of North Carolina. Defendant Ashley HomeStores, LTD (hereinafter "Ashley HomeStores") is a Wisconsin business entity whose principal office is in Arcadia, Wisconsin and is and has at all relevant times been doing business in the state of North Carolina. Defendant Ish-Moore, Inc. d/b/a/ Ashley Furniture HomeStores (hereafter "Ish-Moore") is a North Carolina corporation and is and has at all relevant times been doing business in the state of North Carolina. Ish-Moore assists in operating one or more Ashley Furniture HomeStores.

Plaintiff alleges that all Defendants work with each other as an integrated enterprise and/or a joint employer. Plaintiff refers to the three named Defendants, Ashley Furniture, Ashley HomeStores, and Ish-Moore, collectively as "Ashley" or "Defendants."

Plaintiff was considered an excellent salesperson who was highly motivated and eager to do a good job. Almost immediately upon being hired, Plaintiff alleges she was sexually harassed by Defendants' "keyholder" and Plaintiff's direct supervisor, Kevin Capers. Plaintiff alleges that Capers subjected her to a barrage of sexual comments and innuendo to the point that his actions became physically intimidating. Capers' conduct was pervasive in Defendants' Pineville store and

it was allegedly common knowledge among both its management and employees.

In addition to the sexual harassment by Capers, Plaintiff alleges gender harassment by another manager and "keyholder", Andy Withrow. While treating Defendants' female employees with equal disdain, Withrow's harassment of Plaintiff was especially heinous in that he would frequently berate her in front of customers and employees, often telling Plaintiff that her days were numbered and that she would be fired.

As a result of Capers' and Withrow's discriminatory actions, Plaintiff alleges that she could not eat, lost 30 pounds, and began to miss days at work due to stress and anxiety. Due to her absences, Plaintiff received a verbal warning for absenteeism and poor performance on June 14, 2007.

Sometime in June 2007, Plaintiff was assigned to work on the team of Defendant Manager Trevor Campbell. Almost immediately, Campbell began to harass Plaintiff with regard to her performance. At that time, Plaintiff noticed that Campbell's harassment was limited to female employees and in particular, African-American female employees. On July 13, 2007, Plaintiff met with Defendants' General Manager Jerry Peters and current supervisor Campbell. At this meeting, Plaintiff presented Peters with a typed letter detailing the hostile work environment created by Capers and Withrow, citing the individual gender discrimination and sexual harassment directed toward her.

After Plaintiff's complaint to Peters, Defendants' management began to scrutinize her more closely than other similarly situated employees. On July 16, 2007, just three days after the meeting with Peters and Campbell, Plaintiff was given another verbal warning for missing work and poor performance "over the last few months." At that time, Plaintiff believed that the warning was in direct retaliation for her complaints to Peters and Campbell.

Shortly thereafter, and despite her complaints against Withrow, Defendants' management transferred Plaintiff from Campbell's team to Withrow's team. Plaintiff alleges that the harassment by Withrow increased as a result of her complaints. On October 1 and 2, 2007, Plaintiff was given back to back written warnings. It became obvious to Plaintiff that these written warnings were in direct retaliation to her complaints to Peters.

On October 31, 2007, more than 180 days prior to filing this action, Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") styled, Claudia Chambers v. Ashley Furniture Homestore, EEOC Charge No. 430-2008-00388, alleging race and sex discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq. On January 7, 2008, within two months of her EEOC charge, Plaintiff was suspended "indefinitely with possible termination pending." Plaintiff was never allowed to return to work. On May 27, 2008, more than 180 days prior to filing this action, Plaintiff filed a second administrative charge of discrimination with the EEOC styled Claudia Chambers v. Ashley Furniture, EEOC Charge No. 430-2008-03199, alleging retaliation by Defendants.

On August 26, 2009, Plaintiff requested and was issued a right to sue letter on her first charge of discrimination to the EEOC. On October 22, 2009, less than ninety days prior to initiating this action, Plaintiff was issued a right to sue letter on her charge of retaliation to the EEOC.

On November 24, 2009, Plaintiff commenced this action against Ashley Furniture by filing an Application and Order Extending Time to File Complaint and a Civil Summons to be Served with Order Extending Time to File Complaint in Mecklenburg County Superior Court.

On December 14, 2009, Plaintiff filed a Complaint and Delayed Service of Complaint against Ashley Furniture in Mecklenburg County Superior Court. On February 17, 2010 and May

4

18, 2010, Plaintiff had Alias and Pluries Summonses issued as to Ashley Furniture. On July 8, 2010, Ashley Furniture received a copy of Plaintiff's Complaint and related pleadings via certified mail.

On July 29, 2010, Plaintiff filed her First Amended Complaint and added Ish Moore and Ashley HomeStores. She pled that each Defendant "works with the other defendants in what is an integrated enterprise and/or is a joint employer with the other defendants of employees such as Plaintiff Chambers." (Amended Complaint ¶ 2,3,4).

In the First Amended Complaint, Plaintiff asserts six causes of action against Defendants: (1) discrimination in violation of North Carolina public policy as set forth in N.C. Gen. Stat. §143-422.1, *et. seq.* ("NCEEPA"); (2) discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.* ("Title VII"); (3) discrimination, harassment, and retaliation in violation of Section 1981, 42 U.S.C. §1981, *et. seq.* ("Section 1981"); (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) negligent supervision and retention by Defendant.

On August 6, 2010, Defendants timely removed the action from Mecklenburg County Superior Court to United States District Court on the basis of federal question subject matter jurisdiction. Removal has not been challenged and appears proper.

On September 13, 2010, Ashley Furniture and Ashley HomeStores filed their Motion to Dismiss (document #15). These Defendants contend that Plaintiff was never an employee of either entity and Plaintiff's bare allegation that they are an integrated enterprise or joint employer with Ish Moore fails under the pleading standards enunciated by the United States Supreme Court in Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). These Defendants further contend that because they were not expressly named in Plaintiff's EEOC charge, she failed to exhaust her administrative remedies for her Title VII claims, which mandates

dismissal for lack of subject matter jurisdiction.

In her Memorandum in Opposition to Defendants' Motion (document #26), Plaintiff argues that there is substantial evidence of an integrated enterprise and that initial evidence is sufficient to support Plaintiff's request to conduct discovery.

On September 13, 2010, Ish Moore filed its Motion to Dismiss (document # 17) contending that Plaintiff's Title VII claims are time-barred because Plaintiff did not file a lawsuit against Ish Moore within 90 days of receiving a right to sue letter from the EEOC. Ish Moore further contends that numerous allegations contained in the Amended Complaint concern conduct that was not the subject of a timely filed EEOC Charge of Discrimination and are time barred. Finally, Ish Moore contends that Plaintiff's state law claims are deficient and should be dismissed for failure to state a claim upon which relief may be granted.

In her Memorandum in Opposition to Ish Moore's Motion (document #27), Plaintiff argues that her Title VII claim against Ish Moore is timely because there is an integrated enterprise among the three Defendants and suit against Ashley Furniture was sufficient to confer jurisdiction over the remaining entities. Plaintiff does not oppose Ish Moore's motion to dismiss her negligent infliction of emotional distress claim. However, Plaintiff argues that her remaining state law claims are viable and not time barred.

On September 17, 2010, Ashley Furniture and Ashley HomeStores filed their Motion for Sanctions (document #22) asking the Court to sanction Plaintiff and Plaintiff's counsel for filing and refusing to withdraw frivolous and factually unsupported claims against Ashley Furniture and Ashley HomeStores.

In her Memorandum in Opposition to Defendants' Motion (document #28), Plaintiff argues that the Motion itself is frivolous and that Defendants have moved for sanctions based on their

contention that Plaintiff's allegation of an integrated enterprise is frivolous. Plaintiff contends that there is ample evidence suggesting that there is an integrated enterprise among the Defendants.

All three of Defendants' Motions are ripe for disposition.

## II.  DISCUSSION OF CLAIMS

**A.  Ashley Furniture's and Ashley HomeStores' Motion to Dismiss under Rule 12(b)(6)**

**1.  Standard of Review**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted

challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

**2. Claims against Ashley Furniture and Ashley HomeStores**

Ashley Furniture and Ashley HomeStores argue that Plaintiff's six claims against them

should be dismissed under Rule 12(b)(6).[1]  Defendants argue that Plaintiff was never an employee of either of their companies and Plaintiff's bare allegation that they are integrated enterprises or joint employers with Ish Moore fails under the pleading standards enunciated by Twombly and Iqbal.

In her First Amended Complaint, Plaintiff does not allege the existence of a specific employer-employee relationship with any Defendant but rather generally alleges that all Defendants were her employer under her integrated enterprise theory.  Plaintiff alleges that each of the three Defendants is "an integrated enterprise and/or is a joint employer with the other defendants of employees such as Plaintiff Chambers." (First Amended Complaint ¶¶ 2, 3 and 4).  Plaintiff does not allege any additional facts regarding the integrated enterprise or joint employer theory.

An integrated employer situation exists where "several companies may be considered so interrelated that they constitute a single employer."  Huskill v. Auto Care, Inc., 192 F.3d 437, 442 (4th Cir. 1999).  In applying the integrated employer test, courts consider the following factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control."  Id.  While control of labor operations is the most critical factor, no single factor is conclusive. Id.

A joint employer relationship "turns on the issue of control over the plaintiff" and occurs where separate legal entities "jointly exercised the requisite amount of control for Title VII liability to hold, rather than being found to be effectively the same enterprise, as under the 'integrated employer' theory." Takacs v. Fiore, 473 F.Supp.2d 647, 656 (D. Md. 2007) (internal quotations omitted).

_____

[1] Defendants submitted with their Motion additional documentation and requested that in the alternative, the Court consider this documentation and convert the Motion to Dismiss into a motion for summary judgment.  As only the pleadings are being considered, the undersigned will not convert the Motion to Dismiss into a motion for summary judgment.

Under the pleading standards set forth in Twombly and Iqbal, Plaintiff has failed to state a claim upon which relief can be granted against Ashley Furniture and Ashley HomeStores. Because Ish Moore was her employer, the only way Plaintiff can bring a claim against Ashley Furniture and Ashley HomeStores is under the integrated enterprise or joint employer theory. In her First Amended Complaint, Plaintiff's integrated enterprise and/or joint employer theory is a "naked assertion devoid of further factual enhancement" and such legal labels and conclusions are not sufficient to withstand a motion to dismiss. See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. Consequently, the undersigned respectfully recommends that Ashley Furniture's and Ashley HomeStores' Motion to Dismiss be granted and the First Amended Complaint be dismissed with prejudice with regard to all claims against Ashley Furniture and Ashley HomeStores.

### B. Ish Moore's Motion to Dismiss Under Rule 12(b)(1) and Rule 12(b)(6)

#### 1. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

A jurisdictional prerequisite under Title VII is the filing of a lawsuit based on the Charge of

Discrimination within ninety (90) days from the date of receipt of the EEOC right to sue letter. 42 U.S.C. § 2000e- 5(f)(1); 29 U.S.C. § 626(e). When the actual date of receipt is established by the evidence, that date is used to determine the start of the ninety (90) day period. Taylor v. Potter, 355 F. Supp.2d 817, 819 (M.D.N.C. 2005). A claimant who fails to file a complaint within the ninety-day statutory time period generally forfeits his right to pursue his claim. Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-51 (1984).

2. **Title VII Claim**

In the instant action, a Notice of Right to Sue as to Plaintiff's First Charge was issued by the EEOC on August 26, 2009, and accordingly, the deadline for filing an action with regard to substantive allegations contained in that charge was November 24, 2009. As to Plaintiff's Second Charge, the EEOC issued a Notice of Right to Sue on October 22, 2009, and accordingly, the deadline for filing an action with regard to substantive allegations contained in that charge was January 20, 2010.

As detailed above in the procedural history, Plaintiff did not sue her employer, Ish Moore, by either of these deadlines. Instead, the Complaint filed within the ninety (90) day right to sue period was filed against Ashley Furniture. Ish Moore contends that it had no notice of the filing of the Complaint against Ashley Furniture until July 21, 2010. (Suppl. Decl. of Stewart ¶ 7). Plaintiff argues that based on her integrated enterprise theory, the fact that suit was filed within the ninety (90) day right to sue period against Ashley Furniture is sufficient to confer jurisdiction over the remaining enterprises, and the First Amended Complaint adding Ish Moore as a Defendant should relate back to the original date of the lawsuit.

Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of amended pleadings and provides, in pertinent part:

> An amendment of a pleading relates back to the date of the original pleading when: . . .the amendment changes the party or the naming of the party against whom a claim is asserted, if [the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading] and if, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c). The Fourth Circuit has held that Rule 15(c) "permits a plaintiff to name a new defendant *in place of* an old one, but does not permit a plaintiff to name a new defendant *in addition to* the existing ones." Onan v. County of Roanoke, No. 94-1770, 1995 WL 234290, at *2 (4th Cir. April 21, 1995) (emphasis in original) (citing Wilson v. United States Government, 23 F.3d 559, 563 (1st Cir. 1994); Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993); In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449 (6th Cir. 1991); Jacobson v. McIlwain, 145 F.R.D. 595, 603 (S.D. Fla. 1992); Jordan v. Tapper, 143 F.R.D. 567, 573-74 (D.N.J. 1992)).

Plaintiff has neither alleged, nor argued any mistake on her behalf regarding the identity of the proper party to be sued in this case and has instead, focused on the argument that all three Defendants are an integrated enterprise. In fact, in her response to Ish Moore's Motion, Plaintiff asserts that "counsel should have clearly pled claims against all three Ashley entities now identified in the amended complaint, and regrets failing to do that initially. However, due to the fact that there is substantial evidence the three Ashleys operated substantially as one employer . . . there was no need to plead a mistake." (document #27, p. 6).

As stated above, the Court finds that Plaintiff has not pled sufficient facts to support an integrated enterprise theory. Furthermore, in this case, there was no "mistake concerning the proper party's identity," as required by Rule 15(c). Plaintiff fully intended to sue Ashley Furniture and when she discovered that Ish Moore was her actual employer, she advanced an integrated enterprise

theory.  Because Plaintiff did not add Ish Moore as a Defendant in place of the original Defendant in this case, the Title VII claim asserted against Ish Moore does not relate back.  Therefore, Plaintiff's Title VII claim is time-barred as a matter of law and the undersigned respectfully recommends that the Ish Moore's Motion to Dismiss with respect to Plaintiff's Title VII claim be granted.

### 3.  Section 1981 Claim

Ish Moore's Motion to Dismiss (document # 17) makes a blanket request that the Court dismiss all of Plaintiff's claims.  However, the accompanying "Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) and (6)"(document #18) does not address Plaintiff's Third Cause of Action, violation of 42 U.S.C. § 1981, and  at the conclusion of the Memorandum, Defendant specifically fails to request that Plaintiff's § 1981 claim be dismissed.  Consequently, the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be denied with regard to this claim.

### 4.  State Law Claims in Violation of North Carolina Equal Employment Practices Act ("NCEEPA")

Ish Moore moves that Plaintiff's state law claim in violation of NCEEPA be dismissed because the NCEEPA establishes no private right of action for an employee against an employer for a hostile work environment based on race or gender, nor does it afford any relief based upon an employer's disciplinary actions.  Plaintiff argues that her Complaint alleges a claim for wrongful discharge under the NCEEPA and that North Carolina law supports a claim for wrongful discharge based upon sexual harassment as a violation of North Carolina public policy.

North Carolina is an employment "at will" state, meaning that employees can be fired at any time and for any reason, or even no reason, by an employer.  Coman v. Thomas Mfg. Co., 325 N.C.

172, 175, 381 S.E.2d 445, 446 (1989). However, there is a limited public policy exception to the "at will" rule which states that "there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." Id. at 175, 381 S.E.2d at 447. The NCEEPA provides that:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

Courts have interpreted the NCEEPA's public policy declaration to allow a plaintiff to bring a common law claim for wrongful discharge. McLean v. Patten Communities, Inc., 332 F.3d 714, 721 (4th Cir. 2003) (remanding for consideration of plaintiff's claims for wrongful discharge under NCEEPA on account of race and gender discrimination); Hughes v. Bedsole, 48 F.3d 1376, 1383-84 (4th Cir.1995) (limiting North Carolina public policy claim to wrongful discharge); Hughes v. Hewlett Packard Corp., No. 3:07-CV-216, 2008 WL 4372794, *2 (W.D.N.C. Sept. 22, 2008) (acknowledging that a discharge in violation of NCEEPA can give rise to a wrongful discharge claim); Jarman v. Deason, 173 N.C. App. 297, 299, 618 S.E.2d 776, 778 (2005) (finding NCEEPA clearly and distinctly announces North Carolina's public policy with respect to employment discrimination).

North Carolina courts and federal courts interpreting North Carolina law have repeatedly held that the NCEEPA does not provide additional private causes of action for harassment, retaliation, or hostile work environment. See McLean, 332 F.3d at 719 (holding that harassment and retaliation are not common law torts in North Carolina and that there is no private right of action under North Carolina law for retaliation under NCEEPA); Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th

14

Cir. 2002) (holding "no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy."); Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (holding NCEEPA's public policy does not allow a claim for sexual harassment in the absence of termination). With regard to sexual harassment claims, the Fourth Circuit explained "[t]he distinguishing feature between the claim disallowed in Smith and the claim allowed in McLean is that the claim allowed in McLean alleged a wrongful discharge because of the plaintiff's refusal of sexual favors to her supervisor, while the claim disallowed in Smith did not allege wrongful discharge, just sexual harassment." Townsend v. Shook, 323 F. App'x 245, 251 (4th Cir. 2009).

Plaintiff's Complaint initially sets forth the factual allegations in paragraph 18 that "Plaintiff was suspended 'indefinitely with possible termination pending.' Plaintiff was never allowed to return to work" and then in "Plaintiff's First Cause of Action" concludes in paragraph 24 that "In subjecting Plaintiff to race discrimination, gender harassment, including hostile environment, sexual harassment, and in terminating Plaintiff's employment due to her race and gender and also in retaliation for her complaints of sexual harassment, Defendants violated the public policies of the State of North Carolina." (First Amended Complaint ¶¶ 18 and 24).

Taking Plaintiff's allegations as true and construing all reasonable inferences in her favor, the undersigned finds that, at this stage of the case, Plaintiff has stated a claim for wrongful discharge in violation of the NCEEPA. Therefore, the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be denied with respect to this claim. However, to the extent that Plaintiff asserts additional state claims under the NCEEPA separately from her claim for wrongful discharge, dismissal is appropriate and the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be granted in that regard.

## 5.  **Negligent Infliction of Emotional Distress Claim**

Plaintiff does not oppose the Defendant's Motion to Dismiss her negligent infliction of emotional distress claim.  Therefore, the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be <u>granted</u> with respect to this claim.

## 6.  **Intentional Infliction of Emotional Distress Claim**

Ish Moore argues that Plaintiff's claim for intentional infliction of emotional distress (IIED) should be dismissed because the only conduct alleged to have occurred within the three years prior to the filing of the First Amended Complaint cannot be characterized as "extreme and outrageous." Plaintiff argues that IIED claims that involve acts of sexual harassment have survived summary judgment motions and that her allegations are sufficient to withstand Rule 12(b)(6) scrutiny.

Under North Carolina law, in order to maintain an action for IIED, a plaintiff must show: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress.  <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 335 (N.C. 1981). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Guthrie v. Conroy</u>, 567 S.E.2d 403, 408 (N.C. App. 2002) (quoting <u>Briggs v. Rosenthal</u>, 327 S.E.2d 308, 311 (N.C. App.), <u>cert. denied</u>, 332 S.E.2d 479 (N.C. 1985).  "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context . . ." <u>Efird v. Riley</u>, 342 F.Supp.2d 413, 427 (M.D.N.C. 2004).

While a claim of IIED may be based upon acts of sexual harassment, the behavior must be more than "mere insults, indignities, and threats."  <u>Hogan v. Forsyth Country Club Co.</u>, 340 S.E.2d 116, 123 (N.C. App. 1986) (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused

to grant pregnancy leave, and terminated an employee who left work due to labor pains). Furthermore, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." Id. The determination of whether conduct rises to the level of extreme and outrageous is a question of law. Guthrie, 567 S.E.2d at 408.

In Guthrie, the North Carolina Court of Appeals considered a claim for IIED based on sexual harassment and stated:

> [O]ur review of the relevant case law indicates that claims of IIED (intentional infliction of emotional distress) based upon allegations of sexual harassment generally have included one or more of the following: an unfair power relationship between defendant and plaintiff; explicitly obscene or "X rated" language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff; or, defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts.

567 S.E.2d at 411. See also, Bratcher v. Pharmaceutical Product Dev., Inc., 545 F.Supp.2d 533, 545 (E.D.N.C. 2008) ("In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching."); Sheaffer v. County of Chatham, 337 F.Supp.2d 709, 733 n.14 (M.D.N.C. 2004) ("North Carolina courts have often found extreme and outrageous conduct only in cases involving sexual advances, obscene language and inappropriate touching.").

Plaintiff alleges that she was subjected to "a barrage of sexual comments and innuendo to the point that Mr. Capers' actions became physically intimidating." (First Amended Complaint ¶ 10). Plaintiff further alleges gender harassment by another manager which "was especially heinous in that he would frequently berate and scream at her in front of customers and employees, often telling Plaintiff that her days were numbered and that she would be fired." (First Amended Complaint ¶ 11). Even taking Plaintiff's allegations as true, these vague allegations do not rise to the level of being

atrocious and utterly intolerable in a civilized community, and do not constitute extreme and outrageous conduct to support a claim for IIED. Therefore, the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be <u>granted</u> with respect to this claim.

### 7. <u>Negligent Retention and Supervision Claim</u>

Ish Moore argues that Plaintiff's claim for negligent retention and supervision should be dismissed because Plaintiff has failed to allege that an employee committed a tortious act against her. Plaintiff does not address this Motion in her Memorandum in Opposition.

In order to state a claim for negligent supervision and retention against an employer under North Carolina law, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." <u>Jackson v. FKI Logistex</u>, 608 F.Supp.2d 705, 707 (E.D.N.C. 2009) (quoting <u>Smith v. Privette</u>, 495 S.E.2d 395, 398 (N.C. App. 1998)). North Carolina law requires, as "[a]n essential element of a claim for negligent retention," that an employee of the employer "committed a tortious act resulting in plaintiff's injuries." <u>Waddle v. Sparks</u>, 414 S.E.2d 22, 29 (N.C. 1992).

In <u>McLean v. Patten Communities, Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003), the Fourth Circuit held that North Carolina law required that the tort underlying a negligent retention and supervision claim be a common law tort, and that a violation of 42 U.S.C. § 1981 did not qualify.

Plaintiff alleges in conclusory fashion that Defendants "were negligent in their supervision and control of employees, in that Defendants knew or should have known of the unlawful discrimination, and other abusive treatment directed toward Plaintiff by Mr. Capers and Mr. Withrow and failed to take prompt and appropriate remedial or corrective action to protect her." (First Amended Complaint ¶ 55). Although the Court must accept the Plaintiff's factual allegations as true,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). Plaintiff's claim for negligent retention consists of merely conclusory statements and fails to allege facts to support the claim. Furthermore, based on the Fourth Circuit precedent, Plaintiff cannot maintain this claim without alleging that an employee committed a common law tort. This element is completely absent from Plaintiff's pleading. Therefore, the undersigned respectfully recommends that Ish Moore's Motion to Dismiss be granted with respect to this claim.

### C. Ashley Furniture's and Ashley HomeStores' Motion for Sanctions

Ashley Furniture and Ashley HomeStores argue that the Court should sanction Plaintiff and her counsel for filing and refusing to withdraw frivolous and factually unsupported claims against them in violation of Rule 11 of the Federal Rules of Civil Procedure. Plaintiff argues that the Motion itself is frivolous and that Defendants have moved for sanctions based on their contention that Plaintiff's allegation of an integrated enterprise is frivolous. Plaintiff contends that there is ample evidence suggesting that there is an integrated enterprise among the Defendants.

Rule 11 provides in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, …-- whether by signing, filing, submitting, or later advocating it -- an attorney . . . certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if

specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**(c) Sanctions.**

**(1) In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

**(4) Nature of a Sanction.** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(b) and (c)(1) and (4).

In this case, Plaintiff sued the wrong entity and then amended her Complaint to add the other two parties and plead an integrated enterprise theory. Although the Court finds that Plaintiff's attempt to plead an integrated enterprise theory failed, as discussed in detail above, she did advance a new theory of liability in her First Amended Complaint. Consequently, there is no Rule 11(b) violation and the undersigned respectfully recommends that the Motion for Sanctions be <u>denied</u>.

### III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends the following: Defendants Ashley Furniture Industries, Inc.'s and Ashley HomeStores, Ltd.'s Motion

to Dismiss (document #14) be **GRANTED** and Plaintiff's First Amended Complaint be **DISMISSED WITH PREJUDICE** with regard to all claims against Ashley Furniture and Ashley HomeStores; Defendant Ish Moore Inc.'s Motion to Dismiss (document #17) be **GRANTED IN PART and DENIED IN PART** and Plaintiff's First Amended Complaint be **DISMISSED WITH PREJUDICE** with regard to all claims against Ish Moore **EXCEPT** Plaintiff's claims for violation of 42 U.S.C. § 1981 and wrongful discharge under NCEEPA; and Defendants Ashley Furniture Industries, Inc.'s and Ashley HomeStores, Ltd.'s Motion for Sanctions (document #22) be **DENIED**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED**.

Signed: November 9, 2010

David S. Cayer
United States Magistrate Judge